OCTOBER TERM, 1883, No. 115½.          OCBOBER 18, 1883.

## Hutchinson *v.* Kerr.

1. Where a man made a clear and specific purchase by parol of a well-defined lot of ground for a sum to be paid in the future, and took possession and made extensive improvements, he had such an equitable estate in the land as would be bound by the lien of a judgment, and the sheriff's vendee under the judgment could recover in ejectment from the owner of the legal title, who had obtained possession by mis-representations of authority from the equitable owner.

2. Declarations made after the entry of the judgment to a stranger by the equitable owner that he could not sell the property because he had no title to it, and that he could not pay the purchase money, and that he intended to move away from it and never come back again, which declarations were communicated to the legal owner, would not discharge the equitable interest from the lien of the judgment.

3. Evidence that the sheriff's vendee never offered to pay the balance of the purchase money, or to carry out the contract, or demanded possession was inadmissible.

4. The owner of the legal title must abandon the possession obtained by misrepresentation, and assert his claim to the purchase money in a legal manner.

Before MERCUR, C. J.; GORDON, PAXSON, TRUNKEY, STERRETT, and CLARK, JJ. GREEN, J., absent.

Error to the Court of Common Pleas of *Butler County*.

Ejectment by James Kerr against Milton Hutchinson for a lot of ground situated in Anandale in the same county.

Both of the parties claimed through James Black. The defendant was a tenant of William G. Smith, who purchased from Black January 24, 1880. The plaintiff set up a parol sale by Black to Daniel Hoffman in 1875, a subsequent entry and occupation by Hoffman, a judgment against Hoffman, entered July 18, 1876, and a sale under execution upon the judgment to the plaintiff in 1880.

Upon the trial in the court below before McJUNKIN, P. J., *Daniel Hoffman* testified in substance for the plaintiff:

In March, 1874, I contracted verbally for a lot of ground from James Black. He agreed with me to sell the lot for forty dollars, and at his mother's death he was to give me a deed clear of all encumbrance whatever. He agreed with me when I took the lumber there to give me a written contract at any time. After the lumber was on the ground he would not give me a contract. I went into possession of the said lot. I built upon it a dwelling and a wagon-shop. I set out some fruit trees and shrub-

bery and fenced the lot. The value of the house was about one hundred and fifty dollars, I should think. The value of the wagon-shop was about twenty-five dollars. The value of the fence was about two or three dollars. The value of the trees and shrubbery was about five dollars, as near as I can remember. I lived upon the same lot with my family. I went upon the same in the fall of 1874, and remained until the spring of 1879. My family stayed until June 7, 1879. When I left the property, I left in the house a bedstead, table, chairs, stove, &c. My work and money I paid James Black amounted to somewhere about twenty-five dollars over and above all set-offs.

*H. C. McCoy* testified for the plaintiff in substance :

After Hoffman went away, his wife stayed there with the children and a girl he got to stay with her. She left in May or June to go to her husband. She left the key with me, and told me to take charge and care of it. I had the key on till the spring of 1880. "Hutchinson came in one day—Milton Hutchinson—and asked me if I had the key for Dan Hoffman's house. I told him, yes, I had. He said, 'Let me have it, Uncle Bill Smith wants it; he wants to look at that house,' and I handed it to him. I was doing something in the store and didn't go to the door. The house is a few feet away from me. He came to the back store-door and says, 'I would give you the key back, but I gave it to Smith.' I asked Smith for the key, and he said, 'I know what I am about; I have got possession of it.' Then he took me to one side and showed me an article he had for it. I knew nothing at all about it till then.

*Q.* Did you get the key again?

*A.* I tried to persuade him to give it to me, but no key."

*James Black*, for the defendant, testified in substance, *inter alia :*

He was to pay me all but ten dollars within two years. When he would pay the purchase money to me I was to article for the lot. He never paid me any part of it. I let it run on until the first of January, 1879. Then I served a notice upon him to leave the property and he did so.

Counsel for the defendant offered to prove by *Milton' Hutchinson* "that Daniel Hoffman, the purchaser of the lot in dispute from James Black by parol, informed the witness in the fall or winter of 1879 that he had no title to the property, that he could not sell the property be-

[Hutchinson *v.* Kerr.]

cause he had no title to it, and that he could not pay the
purchase money, and that he intended to move away from
it and never come back again.   This to be followed by
proof that he did move away and abandon the possession
for the purpose of showing an abandonment of the con-
tract, if any contract has been proven, and that these or
similar declarations were communicated to James Black,
and that in pursuance thereof he resumed possession of
the property in dispute.''

Upon objection, the Court overruled the offer and
granted an exception, saying :

''I don't see how that could be received to affect the
title of the plaintiff acquired under the judgment.   It
was a lien upon the property at the time, and before this
conversation, and we do not see how it could affect the
right of the plaintiff here to the possession of the prop-
erty.''

Counsel for the defendant further offered to prove by
*James Black* ''that Daniel Hoffman, nor any one for him,
ever offered to pay the balance of the purchase money to
carry out the contract on his part ; that Judge Kerr never
offered to perform it after he claimed to be substituted to
the rights of Daniel Hoffman ; that no person ever offered
to pay the purchase money or demanded possession of
him after he resumed possession.''

The Court, upon objection, overruled the offer and
granted an exception.

The Court charged the jury, *inter alia*, as follows :

''[We say, then, that whatever interest Daniel Hoffman
had in the property on the 18th of July, 1876, the date of
the plaintiff's judgment, whatever interest he had in the
land was bound by the lien of this judgment and the sale
made upon it, and the purchase of that interest would
place the purchaser in the position of the defendant, Dan-
iel Hoffman, and entitled him to all the rights and to all
the interest that Daniel Hoffman had in the property ; in
other words, and in the language of the Supreme Court,
we say to you, ' that a judgment binds every interest a
man has in land in the county at the time of its entry or
rendition ;' that the sheriff's sale on the judgment trans-
ferred to the purchaser all that interest as it existed at
the date of the judgment ; therefore, we say to you, in
considering this case as to the plaintiff here, James Kerr,
his interest and rights are determined by the interest and
rights of Daniel Hoffman, that he had in and to this lot
of ground on the 18th of July, 1876, the date of the entry
of the judgment of the plaintiff, James Kerr, against Dan-

iel Hoffman; whatever interest he then had, the plaintiff here has.]

Now, the plaintiff in an action of ejectment must recover, if he recovers at all, upon the strength of his own title, and not on the weakness of the title of the adversary; the plaintiff is bound to show, before he can recover, that he has not only the title to the property, but that he has the right of possession, because the action of ejectment is brought for the purpose of recovering possession, and he must show and satisfy the jury that he has the right of possession as well as the right of property; therefore, it is immaterial in this case whether the defendant, Milton Hutchison, who is in possession, who claims to be in possession, under his own right or as the tenant of William G. Smith, whether he is in possession in his own right or as tenant of William G. Smith, and it is immaterial whether he has title, a good title or not. If the plaintiff is unable to show and satisfy you that he has the right of possession and title to the property, then he cannot recover, no matter where the title is; therefore, in this case, it is not probably the measure or weight of title on the one side or on the other. It is clearly not a question of the weight or measure of title, or which party has the best title. We say that the plaintiff cannot recover, unless he shows, not his title, but his right of possession. If he has not the right of possession, your verdict must be for the defendant, no matter whether he has the title or right of possession or not. If the plaintiff has not, then your verdict could not be for him.

[Then the great question for the jury to determine is, what was the title, and what title had Daniel Hoffman; what interest had he in this property on the 18th of July, 1876, the date of the entry of the judgment by the plaintiff against him, and on which the proceedings were had which brought the property to sale, and ultimately the purchase by and sheriff's deed to the plaintiff.]

In this case, the burden of proof is on the plaintiff to show title, to show that Daniel Hoffman had title. That is not shown by any paper or by any writing; but the plaintiff undertakes to show that Daniel Hoffman had title to this property at the date of the entry of his judgment by virtue of parol purchase—a sale and purchase by a contract which has not been committed to writing, but rests in parol; or, in other words, a verbal agreement between the parties.

Now, there is on our statute-books, a statute called the Statute of Frauds and Perjuries. That means a statute

[Hutchinson *v.* Kerr.]

made and passed by the Legislature for the purpose of preventing frauds and perjuries, and that statute requires that all contracts with regard to real estate of every description, with the exception of leases not exceeding a term of three years, shall be in writing ; otherwise the contract cannot be enforced, and for this reason, for the very purpose of preventing frauds and perjuries, persons undertaking to swear and set up and establish by oath, contracts with regard to the sale of real estate, contracts resting in parol, no writing, nothing permanent with regard to the contract. To prevent this, the law declares all such contracts, with the exception of leases not exceeding three years, shall be in writing ; otherwise, they shall be considered as void, and cannot be enforced. To this statute, the Supreme Court of our State has, from time to time, given constructions, and has, from time to time, relaxed the binding force and effect of the rule of the statute, although many of the cases where they have relaxed the rule of the statute are what are called by the Supreme Court hard cases. Hard cases always make bad precedents ; yet it has been so established by the Court, from time to time, that there are, may be, and must be exceptions to this rule that requires all contracts with regard to real estate to be in writing. [Therefore, the rule laid down and established by the Supreme Court, in the language of Chief Justice Thompson, then chief justice of the Supreme Court of the State, in case of Milliken *v.* Dravo, 17 P. F. Smith, page 233.

'A contract of sale by parol was offered to be proved, delivery of possession pursuant thereto, part payment of the purchase money and valuable improvements made ; that this constituted the full measure of all that ever was required by any case to take the sale out of the operation of the Statute of Frauds and Perjuries.']

The defendant submits a point for specific instructions.

'That if all the disputed facts in proof in the case were found in favor of plaintiff, it would not make out a case of part performance, that cannot be adequately compensated in damages, and therefore does not take the case out of the operation of the Statute of Frauds and Perjuries and the verdict must be for the defendant.'

We refuse to instruct you as requested in this point, and we state, as we have done already, that according to our view of the case and the law, that it is the province of the jury to find the facts, and it will be for the Chancellor, upon the facts so found, to apply the rule and

come to a conclusion whether it would be unjust, unconscionable, and inequitable to rescind the contract."

June 21, 1882, verdict for the plaintiff, upon which judgment was afterward entered.

The defendant then took out a writ of error, assigning as errors, *inter alia*, the offers of the testimony which were rejected, those portions of the charge within brackets, and the answer to his point.

*A. T. Black* for plaintiff in error.

Every parol contract is within the Statute of Frauds and Perjuries, except where there has been such part performance as cannot be compensated in damages: Moore *v.* Small, 7 Harris, 465 ; Clarke *v.* Vankirk, 14 Ser. & R., 354 ; Eckert *v.* Eckert, 3 Penn. Rep., 362 ; Wack *v.* Sorber, 2 Whart., 387 ; McKee *v.* Phillips, 9 Watts, 85 ; Lee *v.* Lee, 9 Barr, 178.

There is not a single fact or circumstance in proof, or in this case outside of the proofs, tending to show that any or all of the acts done by Daniel Hoffman in pursuance of the parol contract cannot be reasonably and adequately compensated in damages.

That a parol contract for the sale of the lot in dispute was made between Black and Hoffman, that Hoffman went into possession in pursuance of the contract, and made improvements that in proportion to the price of the lot might be called valuable, we admit—but there was no increase in the value of the lot or improvements in the meantime. Hoffman, nor any one for him, was not in possession of it as a home for himself and family, or offering to pay the purchase money to carry out the contract on his part ; in short, there was and is nothing in the way of an action for damages for breach of contract against Black, being an adequate and complete remedy.

All the interest Hoffman really had in the land at the date of entry of Kerr's judgment was the naked agreement in parol giving him the right to become the purchaser by an article in writing, on payment of $30 of the purchase money, which was never paid. Kerr knew, because it is the law, that this parol agreement was liable to come to nothing, because either party could rescind it or abandon it.

*Lewis Z. Mitchell*, for defendant in error.

This case is ruled by Eberly *v.* Lehman *et al.*, Pittsburgh Legal Journal, Feb. 28, 1883, page 273 ; McGibbeny *v.* Burmaster, 3 P. F. Smith, 332 ; Harris *v.* Bell,

[Hutchinson *v*. Kerr.]

10 S. & R., 39; Dixon *v*. Oliver, 5 Watts, 509; Gregg *v*. Patterson, 9 W. & S., 197; Wykoff *v*. Wykoff, 3 W. & S., 481; D'Arras *v*. Keyser, 2 Casey, 249.

OCTOBER 29, 1883.—PER CURIAM: The purchase made by Hoffman was clear and specific. The lot was well defined. There is no contention that the sum to be paid therefor was not forty dollars. The payment of ten dollars thereof was to be postponed until the death of the mother of the vendor. Hoffman took possession in pursuance of his purchase. He inclosed the lot with a fence; moved a house on the lot and fitted it up as a residence; erected a wagon-shop thereon, and planted some fruit trees. All the improvements cost nearly two hundred dollars. He resided thereon with his family for several years. While thus in possession under his purchase, and after these improvements, large compared with the amount of the purchase money, were made, the judgment was entered, and found all his equitable estate in the lot. The defendant in error purchased by virtue of a sheriff's sale on that judgment. While Hoffman withdrew from the actual possession before the sheriff's sale was made, yet the key of the house was left in the hands of an agent by Mrs. Hoffman to keep possession for them. That key appears to have been procured from the agent by the owner of the legal title under a misrepresentation of authority from Hoffman. Under the facts disclosed, it cannot be held to be a voluntary yielding up of the possession of the lot. All the evidence given, and the declarations made to one then a stranger to the title, which were rejected, are insufficient to discharge the equitable interest of Hoffman from the lien of the judgment. As Hoffman had been put into possession by the vendor, and had made improvements four times the value of the purchase money, neither he nor one claiming under him could be deprived of the possession in the manner stated. The owner of the legal title must go out of possession and assert his claim in a legal manner. Eberly *v*. Lehman, not yet reported.

Judgment affirmed